CHARLES C. WADE *v.* EDWARD HAUGHT

(No. 7165)

Submitted May 17, 1932. Decided June 11, 1932.

470

*Terence D. Stewart* and *Ezra E. Hamstead*, for plaintiff in error.

*Frank M. Brand* and *Cox & Cox*, for defendant in error.

LITZ, JUDGE:

This is a writ of error to a judgment of $1,500.00 against defendant, Edward Haught, in favor of plaintiff, Charles C. Wade, on an alleged contract between the parties.

After his marriage in 1893 to Prudence Haught, a daughter of defendant, plaintiff set up housekeeping at Fairview in Marion county, where he was employed as an oil well driller. Changing his residence several times in the course of his employment, in 1909 he moved his family (wife and five children) to the home of defendant in response to an invitation of the father-in-law who was then living with his children, Phoebe, Jacob and Kinsey, on a farm in Monongalia county. Plaintiff, however, remained in the oil fields, visiting his family on week-ends, and did not take up his abode at the farm until 1923. Both families resided in the same house, taking their meals together, but only Jacob and Madeline, a daughter of plaintiff born in 1915, have remained regularly at home since 1926.

Plaintiff testified in chief that his wife received a letter from defendant in August, 1909, stating that if she and her family would come and live with him on his farm, he "would go in halves, he would pay half the bills"; that when he and his wife went to see defendant the following Sunday to discuss the proposal, defendant said: "I will do just exactly what the letter said, I will pay half"; that the letter was lost when they moved to the farm immediately thereafter; that he and Kinsey expended $600.00 in enlarging and improving the farmhouse to accommodate both families; that Phoebe and Jacob were imbeciles, and did little, if any, work

on the farm; that during the time he remained in the oil fields he appropriated to the support and maintenance of both families his monthly earnings of $150.00, and the surplus of the produce he raised near his shanty; that there were two apple orchards, a garden plot and two potato patches on the farm; that he kept horses, cattle and other livestock on the farm; that for a few years after he moved his family to the farm defendant furnished meat and other supplies and did light work, but that during the last five years he has furnished no provisions (except cereal for his own use), and has been too feeble to work; that he hired and paid men to work on the farm, his wife caring for defendant, Phoebe and Jacob; that a reasonable compensation for the support and maintenance of defendant and his children would be $6.00 per day; that (according to his estimates) he has spent for groceries $18,000.00 since 1909, and from $1,600.00 to $2,000.00 during the last five years; that since 1926 he has done the farming, and (according to his estimates) has paid gas bills aggregating $240.00, and expenses for improvements as follows: $194.50 for roofing two barns, $300.00 for a chicken house, $250.00 for a wash house, part of which was used as a meat house, and $30.00 for a privy; and that fifteen years ago defendant promised to "set aside" $600.00 in bonds to compensate him for money he had expended for improvements. He introduced in evidence 59 checks, aggregating $1,650.00, representing general expenditures made by him since 1926. On cross-examination he admitted that he has not spent all his earnings supporting the families, but has made several substantial investments; that he is charging defendant for maintenance and support in addition to the general expenditures made by him; that he does not know how much he has expended for groceries since 1926, except one account amounting to $1,100.00; and that of the 59 checks introduced by him in evidence, only five of them (amounting to $30.00) represent expenditures for groceries. John Kennedy testified in behalf of plaintiff, over objection of defendant, that his wife and mother-in-law, who read the letter, told him defendant was going to furnish "the stuff to live on".

Kinsey Haught testified that when notified by their housekeeper that she was going to leave, he wrote the letter in question to his sister, without the authority of his father, inviting her and her family to come and live on the farm, and that nothing was stated in the letter or at the meeting on the following Sunday, relative to apportionment of expenses. Defendant, who was 85 years of age and very feeble at the time of trial, testified that he did not write nor authorize the writing of the letter relied on by plaintiff; and that he had no verbal agreement with plaintiff that he would pay one-half of the expenses.

Mrs. Prudence Wade testified in chief that they lived in tents and inadequate houses prior to moving to her father's farm; that the letter written to her by Kinsey contained no offer on behalf of defendant to pay any part of the expense; that defendant did not provide money sufficient to support his family, and at one time she was compelled to report him to the company for his failure so to do; that defendant and Kinsey furnished supplies for both families, defendant paying all the repair bills and some of the gas bills; that the surplus of the produce raised by them on the farm was sold and the money used to pay current expenses; that defendant has given her $3,800.00 during the time they have lived on the farm, the greater part of which she has spent supporting and maintaining both families; that her son, Russell, also has given her money for the same purpose; and that plaintiff became disgruntled five years ago when defendant gave $1,000.00 to her and $500.00 to Kinsey. She testified on cross-examination that defendant gave her $800.00 in bonds fifteen years ago, $1,000.00 five years ago, $100.00 at a time on different occasions within the last five years, $600.00 within the last year, all of his pension checks (which have gradually increased since 1909 from $10.00 to $100.00 per month), and monthly gas royalty and house rental amounting to $32.00; and that she still has the bonds, but has spent most of the money he has given her within the last five years for food and clothing for the household, and the upkeep of the farm.

Although the greater part of the money supplied by defendant to Mrs. Haught during the five-year period was, according to her testimony, expended by her for the support and maintenance of both families, the court nevertheless told the jury that it could not "allow against the plaintiff's claim any sum, or sums, given to the wife of the plaintiff by the defendant as gifts, and because she was his daughter, in the distribution of his estate, or part thereof, among his living children." This instruction impliedly assumes that the money was given to her as advancements and not, as the jury would have been warranted in finding, for the purpose of defraying family expenses. We are of opinion further that the testimony of the witness Kennedy was inadmissible as hearsay.

The judgment is reversed, verdict set aside, and a new trial awarded.

*Reversed; remanded.*